EX. A  Part 2 of 2

that prevented the lift's arm from being positioned directly up against the structural columns at or about the same level as the installation point for the aforesaid spreader tubes, as was needed to safely and properly perform his assigned, elevated rigging duties.

117.    That upon information and belief, and at all times herein mentioned, defendant TUTOR directly and/or indirectly had actual and/or constructive notice and knowledge prior to December 14, 2012 of the defective, hazardous and unsafe condition of the site at ground level where the subject lift was placed, to wit, the existence of equipment, stored materials and personnel that obstructed and interfered with the aerial basket lift's proper positioning in and around the structural columns that plaintiff was assigned to work on, as was needed to safely and properly perform his assigned, elevated rigging duties.

118.    That upon information and belief, and at all relevant times herein, despite such actual and/or constructive notice and knowledge of the afore-described dangerous, hazardous and unsafe conditions of the lift furnished to plaintiff for a reasonable period of time, defendant TUTOR, and its agents, servants, employees and/or contracting entities failed to correct the same by timely and necessary intervention, maintenance, repair and/or replacement.

119.    That by reason of the above, and pursuant to Labor Law §241(6), defendant TUTOR's violation the aforesaid Industrial Code Rules as set forth in Part 23 of Title 12, constituted a failure to use reasonable care in constructing, shoring, equipping, or guarding the work and/or in arranging, operating or conducting such work performed by plaintiff at the work place as set forth above.

120.    That by reason of the above, defendant TUTOR's non-compliance with the specific protections mandated by the aforesaid Industrial Code rules, which represented the breach of its non-delegable duty of reasonable care as statutory general contractor and/or agent of the owner(s) for the subject project, constituted a statutory violation of Labor Law §241(6).

24

121.    That defendant's statutory violation of Labor Law § 241(6), as set forth above, was a proximate cause in bringing about the personal injuries and resultant damages to plaintiff ROBERT BELL.

122.    That the aforesaid accident and resultant injuries to plaintiff occurred solely as a result of defendant's statutory negligence in violating Labor Law § 241(6), and without any fault of plaintiff ROBERT BELL contributing thereto.

123.    That accordingly, plaintiff is free of any comparative negligence herein.

124.    That by reason of the foregoing, plaintiff ROBERT BELL was caused to sustain and did suffer painful and debilitating personal injuries with permanent sequelae, including but not limited to: acute lumbosacral sprain with paraspinal spasm; L2-L3 disc herniation causing impingement on the exiting nerve root extending into the inferior neural foramen bilaterally with new central annular tear; L5-S1 disc bulge/herniation with spondylolisthesis and pars defect in addition to anterolothesis; intense lower back pain radiating into the lower extremities resulting in foot drop, imbalance and neural compromise, necessitating lumbar epidural steroid injections both before and after reconstructive spinal surgery performed on or about June 6, 2013, to wit: L5-S1 transforaminal lumbar interbody fusion, placement of posterior pedicle screw instrumentation L5-S1, placement of PEEK interbody cage at L5-S1, L5 Gill laminectomy, and use of local autograft and Novabone graft substitute. Upon information and belief, all of the injuries set forth herein, and their effects are permanent in nature and were proximately caused by the aforementioned accident or in the alternative, some of the injuries were of a pre-existing nature, which were significantly exacerbated and/or triggered by this occurrence.

125.    Upon information and belief, plaintiff's injuries were and remain the cause of intense physical pain and mental anguish, present and future, all of which required plaintiff to obtain

25

hospital, surgical, medical and therapeutic treatment and care for the said injuries, confining him to bed and/or home in an effort to alleviate and/or cure some of the ills, injuries and disabilities he had suffered, incapacitating him from attending to his usual activities and occupation, thereby depriving him of the income, fringe benefits and retirement pension contribution earned as a union structural steel and bridge painter for Local 806/DC-9, and he was further caused to be prevented from enjoying the normal fruits of his activities, including but not limited to family, social, recreational and occupational functioning, all resulting in substantial pain and suffering, economic loss and quality of life diminution; and, upon information and belief, plaintiff ROBERT BELL will be compelled to seek additional medical care and therapy for said injuries and their sequelae, for an indefinite period of time, will likely require further spinal surgery, and has suffered a loss and/or diminution of income and economic opportunity by virtue of his ongoing and continuing inability to perform any and/or all of the required tasks of his customary occupation, and further, has sustained and will continue to sustain loss and/or diminution of his union earnings, fringe benefits/annuities and retirement pension for an indefinite time into the future. Upon information and belief, all of the above will result in future and continuing pain, limitation and/or loss of enjoyment of life, lifestyle and other losses resulting from the said occurrence.

126.    That the limitations to joint and several liability set forth in Article 16 of the CPLR are inapplicable herein.

127.    By reason of the above, plaintiff ROBERT BELL has sustained damages, both general and special, in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFF ROBERT BELL FOR NEGLIGENCE PURSUANT TO NEW YORK STATE LABOR LAW § 200(1)

128.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth at length herein.

129.    That on and before December 14, 2012, defendant TUTOR, and its agents, servants, employees and/or contracting agents, directly and/or indirectly, directed, controlled, managed and inspected the means and methods of elevated work activities that plaintiff ROBERT BELL was engaged in when the subject accident occurred.

130.    That pursuant to Labor Law §200(1), and at all relevant times herein, defendant TUTOR and its agents, servants, employees and/or contracting agents, owed a statutory duty of reasonable care to make the subject work place reasonably safe.

131.    That pursuant to Labor Law §200(1), and at all relevant times herein, defendant TUTOR and its agents, servants, employees and/or contracting agents, owed a statutory duty of reasonable care to plaintiff to correct any unsafe condition that defendant created, as well as any unsafe condition that was actually and/or constructively known to it or to any of its agents, servants, employees and/or contracting entities.

132.    That pursuant to Labor Law §200(1), and at all relevant times herein, defendant TUTOR and its agents, servants, employees and/or contracting agents, owed a statutory duty of reasonable care to plaintiff to conduct reasonable inspections with adequate frequency to detect unsafe work conditions and/or equipment in use at the project, and to correct such conditions and/or equipment that were and/or could have been discovered through such inspections.

133.    That pursuant to Labor Law §200(1), and at all relevant times herein, defendant TUTOR and its respective agents, servants, employees and/or contracting agents, owed a statutory duty of

27

reasonable care to plaintiff to correct any unsafe condition that existed for so long that, in the use

of reasonable care, defendant and/or its agents, servants, employees and/or contracting entities

should have known of such unsafe condition's existence.

134.    That pursuant to Labor Law §200(1), and at all relevant times herein, defendant TUTOR

and its agents, servants, employees and/or contracting agents, owed a statutory duty of

reasonable care to plaintiff to furnish a safe workplace free of foreseeable hazards.

135.    Upon information and belief, at the aforesaid time and place, defendant, and its agents,

servants, employees and/or contracting entities, knew or should have known, that the assigned

work area and the equipment furnished to ROBERT BELL for his use were unsafe, defective,

hazardous and dangerous.  More specifically, defendant TUTOR, and its agents, servants,

employees and/or contracting entities, was statutorily negligent in violating the protections

afforded by Labor Law § 200(1) as follows:  in negligently furnishing plaintiff and co-workers

with aerial basket lifts that were not maintained in good repair and in proper operating condition

at all times; in failing to conduct directly or indirectly inspections of adequate frequency of such

lift(s) that it defendant knew or should have known would be deployed during the installation of

spreader tubes at a significant elevation; in failing to mandate to and/or hold accountable

contractors employed on the site, in particular AHERN, for the conduct of daily inspections of

and operational tests for all aerial basket lifts deployed at the subject premises and project to

discover defective, hazardous and unsafe conditions in such equipment that required correction

by necessary repairs and/or replacement; in failing to designate and/or hold accountable persons

so designated to inspect, service, repair and/or replace such lifts to avoid preventable accidents to

workers, in particular plaintiff ROBERT BELL, who were suffered to use such defective,

hazardous and unsafe equipment while performing assigned, elevated rigging tasks; in failing to

28

provide timely and necessary safety supervision and oversight to contractors employed at the subject premises and project concerning the use by such contractors, to wit, AHERN, and its agents, servants and/or employees of aerial basket lifts that were not maintained in good repair and in proper operating condition at all times; in failing to exercise its actual and/or implied authority as general contractor and/or agent of the owner(s) of such worksite to stop contractors, including but not limited to AHERN, from using aerial basket lifts on site that were not maintained in good repair and in proper operating condition at all times thereby exposing elevated workers, in particular, plaintiff ROBERT BELL, to foreseeable risks of harm and injury while performing assigned elevated rigging duties; in failing to exercise its actual and/or implied authority as general contractor and/or agent of the owner(s) of such worksite to stop contractors, including but not limited to AHERN, from directing its workers to utilize aerial basket lifts that were defective, hazardous and unsafe, and in need of repair or replacement; in failing exercise its actual and/or implied authority as general contractor and/or agent of the owner(s) of such worksite to stop contractors, including but not limited to AHERN, from using aerial basket lifts with known defects, malfunctions or other conditions identified during inspections and testing, which defendant knew or should have known may affect the safe operation of such lifts; in negligently allowing contractors employed at the site, including but not limited to AHERN, to place such defective, unsafe and hazardous aerial basket lifts into operation despite defendant's actual and/or implied authority as general contractor and/or agent of the owner(s) of such worksite to stop such practice until and unless such were made safe to operate; in failing to exercise its actual and/or implied authority as general contractor and/or agent of the owner(s) of such worksite to stop/prevent the operation of aerial basket lifts by site contractors, including AHERN, that presented foreseeable risks of harm to workers, in particular plaintiff ROBERT

BELL, despite actual and/or constructive of such defects, malfunctions and other unsafe conditions identified and/or found during inspections and operational testing; in failing to exercise its actual and/or implied authority as general contractor and/or agent of the owner(s) of such worksite to stop/prevent the site contractors, including AHERN, from running aerial basket lifts at the site that were maintained with temporary, haphazard, inadequate and ineffective measures not consistent with good repair and proper operating condition, that exposed workers, in particular plaintiff ROBERT BELL, to foreseeable risks of harm and injury; in failing to so arrange and conduct the subject worksite by exercise of its actual and/or implied authority in such a safe manner and with equipment that was in good repair and proper operating condition at all times; in failing to order and direct site contractors, including AHEARN, by exercise of its actual and/or implied authority as project general contractor and/or owner(s)' agent, to arrange and conduct the worksite in a safe manner and with equipment that was in good repair and proper operating condition at all times; in failing to ensure that the subject workplace was so arranged, conducted and/or operated so as to prevent equipment and/or materials situated on the ground to obstruct, impair and/or otherwise compromise the ability of elevated workers situated in aerial basket lifts, in particular plaintiff, from operating, positioning and/or jibbing such lifts' arms so that assigned and elevated rigging duties could be performed properly and safely at all times; in failing to ensure that the subject workplace was so arranged, conducted and/or operated so as to prohibit persons on the ground or grade level from entering the area directly beneath any aerial basket lift that was extended and elevated to allow elevated workers situated in aerial basket lifts, in particular plaintiff, to operate, position and/or jib during the placement of ten-foot long, 112 lb. spreader tubes into installation points on the outside of structural columns at a height of approximately 20 feet above ground level; in negligently allowing site contractors to

30

operate aerial basket lifts at the subject premises and project despite the existence of equipment, materials and persons on the ground that interfered with, obstructed and/or otherwise compromised the proper and safe positioning and operation of such devices; in failing to otherwise stop/prevent site contractors, including but not limited to AHERN, from using aerial basket lifts on site that were not maintained in good repair and in proper operating condition at all times thereby exposing elevated workers, in particular, plaintiff ROBERT BELL, to foreseeable risks of harm and injury while performing assigned rigging duties at an elevation; and, in knowingly failing to provide a safe workplace, with sufficient health and safety personnel and/or proper supervision, safety oversight and enforcement, and/or quality control over the means, methods and equipment used by site contractors including AHERN at the project, to ensure that all persons employed thereat were not exposed to an unsafe workplace with unsafe equipment/devices that presented foreseeable risks of harm and injury to site personnel, in particular plaintiff ROBERT BELL.

136.    Defendant, and its agents, servants, employees and/or contracting entities were further negligent, careless and reckless in the operation, management, maintenance, use and control of said premises: in causing, permitting and allowing to exist an unsafe and dangerous work site; in negligently, carelessly and recklessly causing, creating and permitting aerial basket lifts deployed at the project to be, become and remain in said dangerous and defective condition, to wit, unable to jib and/or be positioned safely and properly for an unreasonable length of time; in negligently, carelessly and recklessly causing, creating and permitting the aforesaid aerial basket lifts jibbing function, to be, become and remain defective, not in good repair and not maintained in proper operating condition at all times, thereby exposing plaintiff herein to the aforesaid unreasonable and foreseeable hazards described above which were substantial factors in causing

31

injury to him; in allowing the said defective, hazardous and unsafe aerial basket lift to be operated at the subject premises, thereby constituting a nuisance, danger and/or menace, which presented foreseeable risks of harm and injury to elevated workers, in particular ROBERT BELL; in failing to see that said work site and power-operated equipment used thereon was operated, controlled, inspected, maintained, and/or repaired in a timely, safe, necessary, and proper manner as was mandated in applicable health and safety and/or site safety plan(s) specifically promulgated for such project; in knowingly causing, permitting and allowing said elevated device to be, become and remain dangerous, unsafe and improper, thereby jeopardizing the health, safety and welfare of lawful workers employed at the subject premises and project, in particular plaintiff ROBERT BELL; in failing to protect individuals, including plaintiff, from the open and obvious dangerous work conditions existing thereat as described above, despite ample notice, warning and inspection of adequate frequency coupled with the foreseeability of harm from gravity-related injury to body and limb of persons, including plaintiff, who were ordered to work from an elevation using an aerial basket lift that was neither maintained in good repair nor in proper operating condition at all times, and further, that could not be placed into a position that properly protected plaintiff during the course of his performance of spreader tube installation; in ratifying directly or indirectly the unsafe work practices and operations of contractors employed at the job site by failing to exercise contractual authority to stop work and/or compel compliance with the work project's health and safety plan and Labor Law § 200(1); in failing to protect this plaintiff from falling victim to economic duress by directly or indirectly instructing and/or ordering him to perform assigned elevated work from an aerial basket lift that was not maintained in good repair and in safe and proper operating condition at all times, and which was actually and/or constructively known by defendant and its agents,

32

servants, employees and/or contracting entities to be unsafe, despite contractually retained

authority by defendant TUTOR to intervene and remediate the same by ordering timely

correction of such hazard by necessary repairs and/or replacement; in failing to mandate ongoing

safe compliance by its contractors with the health and safety plan that defendant ratified and/or

approved for work performed at the aforesaid project thereby jeopardizing the health, safety and

welfare of lawful workers including plaintiff; and in otherwise failing to furnish a safe workplace

to plaintiff in contravention of Labor Law § 200(1).

137.    That on December 14, 2012, at approximately 11:00 a.m., plaintiff ROBERT BELL was

with a co-worker performing his assigned tasks, to wit, installing spreader tubes with end

couplings for a platform system to be erected outside of structural columns of the High Line spur

from the basket of an aerial lift elevated approximately 20 feet above the sidewalk. Due to other

equipment, materials and site workers placed and/or situated in and around the lift at ground

level that partially obstructed and interfered with the correct positioning of the lift on the

sidewalk and ongoing problems with the subject device's jibbing function, the furnished aerial

lift could not be so positioned and jibbed as to allow the basket to be placed flush against the

aforesaid column and at the same level with the installation point. Instead, plaintiff could only

jib the aerial lift's basket to within approximately three feet of and approximately four to five

feet below the installation point. The aerial lift's arm could also not be jibbed into a position that

permitted both workers to install the subject spreader tubes together. Due to the inability of the

lift to be placed and jibbed properly for the assigned task, plaintiff had to lift the 10-foot long

spreader tube weighing approximately 112 lbs. or more by himself, raise and extend it over the

three foot void between the basket and the column, and maneuver the spreader tube with end

couplings over his head and up four to five feet into place on his own, before securing it into

position. While attempting to doing so, the spreader tube became unbalanced, shifted and slipped from his fully extended hands, and began to fall. Plaintiff grabbed at and regained control over the falling spreader tube, thereby preventing it from dropping from the elevated basket onto the sidewalk below, and in doing so, his body twisted, he felt/heard a loud "pop" and immediately experienced the onset of pain throughout his lower back. As a consequence of the above, plaintiff ROBERT BELL sustained serious and disabling injuries.

138.    That by reason of the foregoing, plaintiff ROBERT BELL was caused to sustain and did suffer painful and debilitating personal injuries with permanent sequelae, including but not limited to: acute lumbosacral sprain with paraspinal spasm; L2-L3 disc herniation causing impingement on the exiting nerve root extending into the inferior neural foramen bilaterally with new central annular tear; L5-S1 disc bulge/herniation with spondylolisthesis and pars defect in addition to anterolothesis; intense lower back pain radiating into the lower extremities resulting in foot drop, imbalance and neural compromise, necessitating lumbar epidural steroid injections both before and after reconstructive spinal surgery performed on or about June 6, 2013, to wit: L5-S1 transforaminal lumbar interbody fusion, placement of posterior pedicle screw instrumentation L5-S1, placement of PEEK interbody cage at L5-S1, L5 Gill laminectomy, and use of local autograft and Novabone graft substitute. Upon information and belief, all of the injuries set forth herein, and their effects are permanent in nature and were proximately caused by the aforementioned accident or in the alternative, some of the injuries were of a pre-existing nature, which were significantly exacerbated and/or triggered by this occurrence.

139.    Upon information and belief, plaintiff's injuries were and remain the cause of intense physical pain and mental anguish, present and future, all of which required plaintiff to obtain hospital, surgical, medical and therapeutic treatment and care for the said injuries, confining him

to bed and/or home in an effort to alleviate and/or cure some of the ills, injuries and disabilities he had suffered, incapacitating him from attending to his usual activities and occupation, thereby depriving him of the income, fringe benefits and retirement pension contribution earned as a union structural steel and bridge painter for Local 806/DC-9, and he was further caused to be prevented from enjoying the normal fruits of his activities, including but not limited to family, social, recreational and occupational functioning, all resulting in substantial pain and suffering, economic loss and quality of life diminution; and, upon information and belief, plaintiff ROBERT BELL will be compelled to seek additional medical care and therapy for said injuries and their sequelae, for an indefinite period of time, will likely require further spinal surgery, and has suffered a loss and/or diminution of income and economic opportunity by virtue of his ongoing and continuing inability to perform any and/or all of the required tasks of his customary occupation, and further, has sustained and will continue to sustain loss and/or diminution of his union earnings, fringe benefits/annuities and retirement pension for an indefinite time into the future. Upon information and belief, all of the above will result in future and continuing pain, limitation and/or loss of enjoyment of life, lifestyle and other losses resulting from the said occurrence.

140.    That by reason of the above, defendant TUTOR, and its agents, servants, employees and/or contracting entities directly and indirectly caused or created or contributed to the aforedescribed defective, hazardous and unsafe equipment and site conditions that substantially brought about the complained of accident.

141.    That by reason of the above, defendant TUTOR, and its agents, servants, employees and/or contracting entities had actual and/or constructive notice of the aforesaid defective, hazardous and

unsafe equipment and site conditions that substantially caused the complained of accident and injuries with resultant damages to plaintiff ROBERT BELL.

142.    That by reason of the above, defendant TUTOR, and its agents, servants, employees and/or contracting entities, directly and indirectly had a reasonable opportunity to correct the aforedescribed defective, hazardous and unsafe equipment and site conditions that were known to or should have been known to defendant, which substantially caused the complained of accident but neglected and/or failed to do so.

143.    That the subject accident and resultant injuries/damages to plaintiff ROBERT BELL occurred solely as a result of the statutory negligence of defendant TUTOR, and its agents, servants, employees and/or contracting entities, in violating the statutory protections mandated by Labor Law § 200(1), and without any negligence on the part of the plaintiff contributing thereto.

144.    That the limitations to joint and several liability set forth in Article 16 of the CPLR are inapplicable herein.

145.    By reason of the above, plaintiff ROBERT BELL  has sustained damages, both general and special, in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF ROBERT BELL AGAINST DEFENDANT TUTOR FOR COMMON LAW NEGLIGENCE

146.    Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs set forth herein above with the same force and effect as though fully set forth at length herein.

147.    That on and before December 14, 2012, defendant TUTOR and its respective agents, servants, employees and/or contracting agents, as general contractor and/or owner(s)' agent

36

directly and/or through others on defendant's behalf, did exercise supervision and control, safety oversight, management and inspection over the means or manner of the work performed and equipment used on the work site including those tasks and equipment deployed by site contractors, including AHERN, the employer of plaintiff ROBERT BELL.

148.    That on and before December 14, 2012, defendant TUTOR and its respective agents, servants, employees and/or contracting agents, as general contractor and/or owner(s)' agent directly and/or through others on defendant's behalf, did exercise supervision and control, safety oversight, management and inspection over the means or manner of elevated work activities that plaintiff ROBERT BELL was engaged in at the time of the complained of accident occurred.

149.    That on and before December 14, 2012, defendant TUTOR and its respective agents, servants, employees and/or contracting agents, as general contractor and/or owner(s)' agent directly and/or through others on defendant's behalf, did exercise supervision and control, safety oversight, management and inspection over the equipment deployed by site contractors, including AHERN, including without limitation the aerial basket lift that was furnished to and utilized by plaintiff ROBERT BELL at the time the subject accident occurred.

150.    That at all relevant times herein, defendant TUTOR and its respective agents, servants, employees and/or contracting agents, as general contractor and/or owner(s)' agent owed a common law duty of reasonable care to make the subject work place and the equipment used thereon reasonably safe.

151.    That at all relevant times herein, defendant TUTOR and its respective agents, servants, employees and/or contracting agents, as general contractor and/or owner(s)' agent owed a common law duty of reasonable care to plaintiff to correct any unsafe site and/or equipment condition that defendant caused or created, and/or that was known to or should have been known

37

to said general contractor and/or owner(s)' agent, and any of its agents, servants, employees and/or contracting entities.

152.   That at all relevant times herein, defendant TUTOR and its respective agents, servants, employees and/or contracting agents, as general contractor and/or owner(s)' agent owed a common law duty of reasonable care to plaintiff to conduct sufficient inspections of adequate frequency to detect any unsafe site and/or equipment conditions and to correct such conditions that could and should have been discovered through such inspections.

153.   That at all relevant times herein, defendant TUTOR and its respective agents, servants, employees and/or contracting agents, as general contractor and/or owner(s)' agent owed a common law duty of reasonable care to plaintiff to correct any unsafe site and/or equipment conditions that existed for so long that, in the use of reasonable care, defendant and/or its agents, servants, employees and/or contracting entities could and should been remediated before the subject accident occurred.

154.   That at all relevant times herein, defendant TUTOR and its respective agents, servants, employees and/or contracting agents, as general contractor and/or owner(s)' agent owed a common law duty of reasonable care to plaintiff to furnish a safe workplace free of foreseeable hazards, including without limitation the use of aerial basket lifts that were not maintained in good repair and were not in proper operating condition at all times.

155.   That the work being performed at the aforesaid work site at the subject premises on December 14, 2012, required workers, including plaintiff ROBERT BELL, to engage in construction work activities at an elevation of approximately 20 feet above the sidewalk of said premises.

38

156.    On and before December 14, 2012 plaintiff ROBERT BELL was lawfully present on or about the subject premises.

157.    At the aforesaid time and place plaintiff ROBERT BELL was working in the course of his employment and with the actual and/or implied permission, consent, and knowledge of the defendant, and its agents, servants and/or employees at the subject premises in connection with the aforesaid project.

158.    At the aforesaid time and place, plaintiff ROBERT BELL was directed to perform the installation of ten-foot long spreader tubes with end couplings weighing about 112 lbs or more each, on the outside of structural columns from the basket of an aerial lift, which was elevated to a height approximately 20 feet above ground level.

159.    Upon information and belief, at the aforesaid time and place, defendant TUTOR, and its agents, servants, employees and/or contracting entities, knew or should have known, that the work area where plaintiff ROBERT BELL was ordered to perform his work was:  unsafe, hazardous, defective, dangerous, obstructed, underequipped and otherwise inappropriate for the work taking place thereat.  Moreover, equipment furnished to plaintiff for his use at the project, to wit, a power-operated aerial basket lift and its component parts, presented foreseeable risks of harm and injury inasmuch as said lift was allowed and permitted to be, become and remain inadequately inspected, not in good repair and not in proper operating condition at all times for an unreasonable period of time. That defendant was further reckless, careless and negligent in that by itself and/or its agents, servants, employees and/or contracting entities:  knowingly failed to provide a safe workplace with equipment maintained in good repair and proper operating condition at all times, and good practices, proper means and methods, necessary to provide proper protection to workers, in particular plaintiff, during the course of performing assigned,

39

elevated work duties; failed to conduct timely and proper inspection of elevated work operations and equipment used therein at the worksite; neglected to reasonably and intervene by exercise of its retained authority to order immediate work stoppages in response to dangerous, hazardous, unsafe and improper work practices, operations, working conditions and improperly maintained equipment that was not in proper operating condition that was deployed or utilized at the subject project; negligently exercised its supervision and control over the subject workplace by not requiring and/or ensuring full compliance with provisions set forth in the project health and safety or site safety plan(s) governing safe work operations, means, methods and equipment for the subject project; improperly and inadequately supervised or controlled  means and construction methods at the project that were not consistent with a safe workplace and/or good work practices that were required so as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein, in particular plaintiff ROBERT BELL; and, negligently, recklessly and knowingly caused the aforesaid work place, work operations and work equipment used on site to be, become and remain in an unsafe, hazardous, dangerous and improper condition for an unreasonable period of time without correction by necessary changes, repairs and/or replacement.

160. That on December 14, 2012, at approximately 11:00 a.m., plaintiff ROBERT BELL was with a co-worker performing his assigned tasks, to wit, installing spreader tubes with end couplings for a platform system to be erected outside of structural columns of the High Line spur from the basket of an aerial lift elevated approximately 20 feet above the sidewalk.  Due to other equipment, materials and site workers placed and/or situated in and around the lift at ground level that partially obstructed and interfered with the correct positioning of the lift on the sidewalk and ongoing problems with the subject device's jibbing function, the furnished aerial

40

lift could not be so positioned and jibbed as to allow the basket to be placed flush against the aforesaid column and at the same level with the installation point. Instead, plaintiff could only jib the aerial lift's basket to within approximately three feet of and approximately four to five feet below the installation point. The aerial lift's arm could also not be jibbed into a position that permitted both workers to install the subject spreader tubes together. Due to the inability of the lift to be placed and jibbed properly for the assigned task, plaintiff had to lift the 10-foot long spreader tube weighing approximately 112 lbs. or more by himself, raise and extend it over the three foot void between the basket and the column, and maneuver the spreader tube with end couplings over his head and up four to five feet into place on his own, before securing it into position. While attempting to doing so, the spreader tube became unbalanced, shifted and slipped from his fully extended hands, and began to fall. Plaintiff grabbed at and regained control over the falling spreader tube, thereby preventing it from dropping from the elevated basket onto the sidewalk below, and in doing so, his body twisted, he felt/heard a loud "pop" and immediately experienced the onset of pain throughout his lower back. As a consequence of the above, plaintiff ROBERT BELL sustained serious and disabling injuries.

161.    As a result of the foregoing, plaintiff sustained serious and permanent injuries, and was and continues to be disabled from his customary occupation as construction/demolition laborer with resultant economic loss and other associated damages.

162.    That the direct or indirect order, direction and/or instruction by defendant, its agents, servants, employees and/or contracting entities to plaintiff to perform his work in the aforesaid foreseeably dangerous, unsafe and improper work place with defective, hazardous and unsafe equipment violated principles of common law negligence as recognized in the State of New York.

41

163.    That on and prior to December 14, 2012, defendant and its agents, servants, employee
and/or contracting entities, breached the common law duty of reasonable care to provide to
lawful workers including the plaintiff herein that were engaged in elevated work activities, a
reasonably safe work place and that such breach was a proximate cause in bringing about the
serious and debilitating personal injuries and resultant economic loss to plaintiff.

164.    That plaintiff was required to follow the orders of superiors, including but not limited to
those issued by defendant and its respective agents, servants and/or contracting entities.

165.    That on and prior to December 14, 2012, plaintiff had no authority, express or implied, to
exercise his free will to disobey the orders of superiors, including but not limited to those issued
by or on behalf of defendant and its agents, servants, employees and contracting entities.

166.    That defendant and its agents, servants, employees and/or contracting entities breached
their common law duty of reasonable care to plaintiff insofar as they knew or should have
known, that the equipment at the subject construction site whence plaintiff was ordered to
perform his assigned, elevated work duties, to wit, the aforedescribed aerial basket lift:  was
unsafe, defective, dangerous, inappropriate for the same, and further, was not maintained in good
repair and was not in proper operating condition at all times for elevated work activity that
plaintiff was directed to do; was not adequately inspected, tested, repaired, replaced and/or
otherwise made safe for use by lawful, elevated workers, including plaintiff; was allowed to be,
become and remain obstructed by other equipment, materials and personnel in the same area
where the lift was in operation at the same time; was not timely and properly observed,
monitored, inspected and/or tested with adequate frequency to be made safe from foreseeably
dangerous, unsafe and improper hazards including but not limited to the inability to operate, jib
and place the lift basket into proper work position to allow site employees to work together to

safely install long and heavy spreader tubes into installation points on the outside of structural

columns at the subject project and premises; and, was otherwise inadequate and improper to

protect site workers, in particular plaintiff, from foreseeable risks of harm and injury.

167.    That by reason of the defendant TUTOR's common law negligence, plaintiff ROBERT

BELL was caused to sustain and did suffer painful and debilitating personal injuries with

permanent sequelae, including but not limited to: acute lumboscral sprain with paraspinal spasm;

L2-L3 disc herniation causing impingement on the exiting nerve root extending into the inferior

neural foramen bilaterally with new central annular tear; L5-S1 disc bulge/herniation with

spondylolisthesis and pars defect in addition to anterolothesis; intense lower back pain radiating

into the lower extremities resulting in foot drop, imbalance and neural compromise, necessitating

lumbar epidural steroid injections both before and after reconstructive spinal surgery performed

on or about June 6, 2013, to wit:  L5-S1 transforaminal lumbar interbody fusion, placement of

posterior pedicle screw instrumentation L5-S1, placement of PEEK interbody cage at L5-S1, L5

Gill laminectomy, and use of local autograft and Novabone graft substitute.  Upon information

and belief, all of the injuries set forth herein, and their effects are permanent in nature and were

proximately caused by the aforementioned accident or in the alternative, some of the injuries

were of a pre-existing nature, which were significantly exacerbated and/or triggered by this

occurrence.

168.    Upon information and belief, plaintiff's injuries were and remain the cause of intense

physical pain and mental anguish, present and future, all of which required plaintiff to obtain

hospital, surgical, medical and therapeutic treatment and care for the said injuries, confining him

to bed and/or home in an effort to alleviate and/or cure some of the ills, injuries and disabilities

he had suffered, incapacitating him from attending to his usual activities and occupation, thereby

depriving him of the income, fringe benefits and retirement pension contribution earned as a union structural steel and bridge painter for Local 806/DC-9, and he was further caused to be prevented from enjoying the normal fruits of his activities, including but not limited to family, social, recreational and occupational functioning, all resulting in substantial pain and suffering, economic loss and quality of life diminution; and, upon information and belief, plaintiff ROBERT BELL will be compelled to seek additional medical care and therapy for said injuries and their sequelae, for an indefinite period of time, will likely require further spinal surgery, and has suffered a loss and/or diminution of income and economic opportunity by virtue of his ongoing and continuing inability to perform any and/or all of the required tasks of his customary occupation, and further, has sustained and will continue to sustain loss and/or diminution of his union earnings, fringe benefits/annuities and retirement pension for an indefinite time into the future. Upon information and belief, all of the above will result in future and continuing pain, limitation and/or loss of enjoyment of life, lifestyle and other losses resulting from the said occurrence.

169.    That the aforesaid accident occurred solely as a result of the common law negligence of defendant TUTOR, and its agents, servants, employees and/or contracting entities, and without any negligence on the part of the plaintiff contributing thereto.

170.    That by reason of the above, defendant TUTOR, and its agents, servants, employees and/or contracting entities directly and indirectly caused or created or contributed to the aforedescribed defective, hazardous and unsafe equipment and site conditions that substantially brought about the complained of accident.

171.    That by reason of the above, defendant TUTOR, and its agents, servants, employees and/or contracting entities had actual and/or constructive notice of the aforesaid defective, hazardous and

44

unsafe equipment and site conditions that substantially caused the complained of accident and injuries with resultant damages to plaintiff ROBERT BELL.

172.    That by reason of the above, defendant TUTOR, and its agents, servants, employees and/or contracting entities, directly and indirectly had a reasonable opportunity to correct the aforedescribed defective, hazardous and unsafe equipment and site conditions that were known to or should have been known to defendant, which substantially caused the complained of accident but neglected and/or failed to do so.

173.    That the limitations to joint and several liability set forth in Article 16 of the CPLR are inapplicable herein.

174.    By reason of the above, plaintiff ROBERT BELL  has sustained damages, both general and special, in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

WHEREFORE, plaintiff respectfully demands judgment against the defendant, on each and every cause of action set forth above, in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction, together with interest where applicable, and the costs and disbursements of this action.

Dated:  New York, New York
          February 26, 2014

Yours, etc.

QUELLER, FISHER, WASHOR, FUCHS & KOOL, LLP

By:_____
JONNY KOOL
Attorneys for Plaintiffs
ROBERT BELL
233 Broadway, 18th Fl.
New York, New York 10279
(212) 406-1700

45

## ATTORNEY'S VERIFICATION

JONNY KOOL, an attorney duly admitted to practice before the Courts of the State of New York, affirms the following to be true under the penalties of perjury: I am a member of the firm of QUELLER, FISHER, WASHOR, FUCHS & KOOL, LLP, attorneys of record for plaintiff, ROBERT BELL. That I have read the annexed COMPLAINT and know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files. The reason this verification is made by me and not plaintiffs is that plaintiffs are not presently in the county wherein the attorneys for the plaintiffs maintain their offices.

DATED:   New York, New York
         February 26, 2014

_____
JONNY KOOL

46

Index No.
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

ROBERT BELL,

      Plaintiff(s),

-against-

TUTOR PERINI CORPORATION,

      Defendant(s).

---

## SUMMONS & VERIFIED COMPLAINT

---

### QUELLER, FISHER, WASHOR, FUCHS & KOOL, LLP.
*Attorneys for Plaintiff(s)*
233 Broadway, Suite 1800
New York, New York 10279
(212) 406-1700
Facsimile # (212) 406-2313

---



